Opinion of the Court, by
Judge Mills.
William T. Caldwell, administrator of Robert W. Caldwell, brought an action of covenant against Reed, on articles of agreement which read as follows:
“ Articles of agreement made and entered into this 24th of October 1813, between Philip Reed of the first part, and R. W. Caldwell of the second part. The said Reed agrees and binds himself, his heirs, &c. to furnish the said Caldwell with from ten to twelve thousand gallons of good, merchantable whiskey, in good, tight barrels, delivered at M. H. Wickliffe’s warehouse near Bardstown, and the mouth of the Beech Fork; one half to be delivered on or before the first day of May 1814, and the balance on or before the first of May 1815. The said Reed further agrees and binds himself to deliver all the whiskey that he makes, or may have on hand, at his farm near Bardstown, on the first day of February in each year; for which the said Caldwell agrees and binds himself to pay the sum of two shillings and nine pence per gallon, on the first day of May 1816. Given under our hands and seals, the date before mentioned. (Signed) Philip Reed, [Seal.]
R. W. Caldwell, [Seal.]”
The only breach relied on, was the non-delivery of the ten or twelve thousand gallons of whiskey, one half *367 the first of May 1814, and the other on the first of May 1815. All other breaches were relinquished by an entry upon the record. After the evidence was gone through, and the price of whiskey was proved to be more than two shillings and nine pence, on the days of delivery, the counsel for the defendant moved the court to instruct the jury that the criterion of damages in this case should be only the difference between two shillings and nine pence per gallon, and the value of the whiskey on the days of delivery, and not the full value of all the whiskey on those days. The court not being fully advised what instruction to give, reserved the point; and thereupon the jury found as follows:
This is a general rule, subject to exception of the cases where special damage has accrued from the failure of the party in default.
“ We of the jury find for the plaintiff five thousand five hundred and forty dollars in damages, if the law arising on the point reserved be for the plaintiff; but if not, we then find for the plaintiff four hundred and six dollars and sixty-seven cents in damages.”
The court rendered judgment for the lesser damages found by the jury, and rejected the greater, to which the plaintiff below excepted, and to obtain judgment for the greater sum, has prosecuted this writ of error.
The assignment of error also questions the propriety of the verdict, as uncertain and defective; and also, that the reserved point did not sufficiently appear.
It is true, the verdict has not been moulded into form by the court, as is strictly proper to be done, and made to correspond with the issue, but it is written out on the record, as it was probably drafted by the jury, to express their intention; yet, as it is in favor of the complaining party, and its meaning can be ascertained, we do not feel disposed to disturb it on that account. It is also true, that there is nothing on record, before this verdict, to show what was reserved; and we know that it is proper for the record to state what was reserved, or what authorised a conditional verdict, so that the judgment of the court should appear to be the legitimate inference from the history of facts detailed in the record; yet the court caused the reserved point to be entered afterwards, before judgment. Although this may be informal, and the expressions of the point reserved are not so explicit as they might be, yet the true state of the question can be ascertained, and therefore we would rather wink at such informal proceedings, than reverse them, when substantial justice may have been done.
*368 The main question then left, is, as this covenant on the part of the plaintiff in error, who was plaintiff below, is independent of the covenants to be performed by the defendant, the delivery of the whiskey being before the payment of the price, so that the plaintiff’s intestate might fail on his part, and leave the defendant no redress for such failure, the covenant on his part being a precedent condition to be performed by him, ought the plaintiff to recover, as the criterion of damages, the full value of the article to be delivered, on the days of delivery, or only the difference between that value and the price stipulated by the parties?
It is somewhat singular, that this question with regard to the action of covenant, which might be expected frequently to occur, has not been decided more frequently. The court, in their researches, have not met with a case in point, or a principle in the elementary writers, determining this question; and, therefore, have to take it up on the reason which ought to govern it. This silence of the books seems much to favor the idea, that the extent of damages was a matter of fact to be left to the jury, and not of law to be decided by the court. Modern decisions, however, in almost all cases of contract, have established as matter of law, some general rules, subject to various exceptions, which form the criterion of damages, and measure the responsibilities of the contracting parties. Accordingly, with regard to covenants like this, engaging a delivery of personal property at a fixed period, the value of the property on the day of delivery has been decided frequently, both by this and other courts, to be the proper criterion, unless some special circumstances were shown to authorise a departure from the rule. This may, therefore, be properly applied to this case, as the governing principle; and the criterion of damages is the value of the whiskey to be delivered, at the time and place of delivery.
The question then presents itself in another shape, and that is, as the plaintiff’s intestate was not bound to pay the money until after the whiskey was delivered, and had his action on the failure of delivery, without being compelled to pay any thing, and as he had not paid any thing, and the defendant by his failure has lost all remedy at law to recover the price of the whiskey, can the defendant avail himself of that matter, so *369 far as to lessen the damages from the whole price to the difference between the price stipulated and the price existing on the day of delivery? The only plausible argument that we can conceive of, which might be used to preclude the defendant from this mitigation, is, that it is good policy to bind men to the extent of their contracts, and that the force of stipulation ought to have full effect. To this it may be replied, that the damages to which a defendant would be subjected, would frequently be so disproportionate to the actual injury, and so destructive to the defendant, who had received no benefit from the contract, as to assume a character highly penal, and thereby defeat the policy of the measure, instead of aiding the sacredness of the contract; and the force of stipulation would be carried far beyond the injury resulting from its breach. What benefit did the defendant receive from this contract, or what benefit could he receive? Not any thing. But he had violated his stipulation, and for that he ought to be made answerable for the injury he had done to his adversary. What was that injury? If he did not receive the whiskey, he was not any poorer. He actually lost nothing which he before possessed. But had the whiskey been delivered, as he had a right to expect, he would have had to pay the price, and he would then have been enriched, the difference between the price he had to pay, and the price which the article would then command; and this sum, and no more, ought he to be enriched by the verdict. If the price of the commodity had not risen on the day of its reception, he could reap no benefit from its payment, and therefore ought to recover nothing for its non-payment. If the price had fallen, he must have lost by the fulfilment of the contract, and he actually would gain by its non-performance, and could, therefore, have no ground to be enriched by a recovery of damages. In the latter cases, where the price remains stationary or has fallen, there will be such a motive and inducement to fulfil the contract, presented to defendants, that it will keep obligations of this nature sufficiently sacred. Where the price rises, the recovery of the additional price in damages, will be an inducement sufficiently strong, to preserve such contracts inviolable, without inflicting on men, by way of redress for civil injuries, severe penalties, which would enrich one party beyond his injury, *370 and impoverish the other far beyond the mild rules of law or equity, without any quid pro quo, or the means of getting any.
In looking over all the consequences which might result from the decision of the court below, in all its bearings, which we can conceive of, as a general principle in society, we do not discover any that proves the rule inexpedient or deleterious.
We would not be understood as applying this rule to cases of partial performance by the plaintiff, of his stipulations, or to any case where there are mutual remedies, or to cases where the plaintiff, confiding in the contract, has expended labor or money, preparing for the reception of the article, or is disappointed in another market, and other cases where circumstances may be shown well calculated to enhance the damages; for the present is a case not affected by such circumstances, and simply a failure, without any features of aggravation.
The judgment below must, therefore, be affirmed with costs.